IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ashley Austin,              )<br>                                     )<br>            Plaintiff,    )<br>                                     )<br>v.                                  )<br>                                     )<br>Michael J. Astrue,         )<br>Commissioner of Social Security, )<br>                                     )<br>            Defendant.  )<br>_____ ) | C/A No. 0:11-2768-DCN-PJG<br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

This social security appeal is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Ashley Austin, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for disability benefits. Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

### ADMINISTRATIVE PROCEEDINGS

In April 2008, Austin applied for disability benefits, alleging disability beginning June 1, 2003. Austin's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on October 27, 2008, at which Austin, who was represented by Jason Cook, Esquire, appeared and testified. The ALJ, after hearing testimony from a vocational expert, issued a decision on December 18, 2009 denying benefits and concluding that Austin was not disabled. (Tr. 19-32.)



Austin was born in 1989 and had not attained the age of twenty-two years old as of her alleged disability onset date. (Tr. 158.) She has at least a high school education. (Tr. 40.) Austin alleged disability since June 1, 2003 due to bipolar disorder and schizophrenia. (Tr. 170.)

In concluding that Austin had not been under a disability from June 1, 2003 through the date of his decision, the ALJ found that Austin's mood disorder was a severe impairment; however, he found that Austin did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Tr. 21, 23.) The ALJ further gave little weight to the opinions of an examining physician and a nurse practitioner regarding Austin's limitations, and found Austin's descriptions of her subjective symptoms to be not credible. Austin submitted additional evidence to the Appeals Council, which denied her request for review on August 17, 2011, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-6.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d

at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Id.  Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1973).

## ISSUES

Austin raises the following issues for this judicial review:

I.  Examining source opinion evidence.  The opinions of the examining physician support a finding of disability.  The ALJ improperly assessed the opinion of the examining physician, Dr. Bodtorf.  Where the ALJ improperly disregards or ignores the opinion evidence, can his decision be supported by substantial evidence?

II.  Opinion evidence.  The ALJ is required to evaluate all relevant medical evidence, including opinions from "other" medical sources.  Here, the ALJ failed to properly evaluate the opinion of treating source, Claire McLain, APRN.  This opinion supports a finding of disability.  Where the ALJ improperly discounts a medical opinion, can his decision be supported by substantial evidence?

III.  Non-compliance.  The ALJ based his denial on a finding that Austin was non-compl[ia]nt with prescribed treatment.  That defense puts the burden on the Commissioner to produce substantial evidence that the claimant was warned, that treatment would resolve the problem, that the claimant was non-compliant during all relevant times, and that there was no acceptable reason for the failure.  Where the ALJ failed in his burden to show each of these elements, has an error of law been committed?

IV.  Where new evidence is submitted to the Appeals Council that is sufficiently material that it might have affected the Commissioner's final decision, the Meyer case requires that evidence be weighed.  In this case there was such evidence, and it has not been weighed.  Where there is new and material



> evidence submitted at the Appeals Council, and where that evidence might have affected the findings of the fact-finder, must the case be remanded so that Commissioner can weigh that evidence?

(Pl.'s Br., ECF No. 14.)

## DISCUSSION

In her appeal, Austin does not rely on an opinion of any treating physician or challenge the ALJ's treatment of any such evidence. Rather, the crux of her case depends on the opinions of an non-treating, examining physician and an "other" medical source—a nurse practitioner.

Regardless of the source, the Commissioner will evaluate every medical opinion received. 20 C.F.R. § 416.927(c). In evaluating medical opinions, generally more weight is given to the opinions of an examining source than a non-examining one. Id. Additionally, more weight is generally given to opinions of treating sources than non-treating sources, such as consultative examiners. Id. Further, an ALJ generally considers the length and nature of the source's treatment relationship with the claimant, the supportability of the opinion, the opinion's consistency with the other evidence in the record, the whether the source is a specialist, and any other factors that may support or contradict the opinion. Id. ALJs are instructed to also apply these factors in evaluating opinions from "medical sources who are not acceptable medical sources," such as nurse practitioners. See SSR 06-03p, 2006 WL 2329939. While only acceptable medical sources, such as licensed physicians, can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose opinions may be entitled to controlling weight, medical sources who are not acceptable medical sources may provide opinions reflecting "the source's judgment about some of the same issues addressed in medical opinions from 'acceptable medical sources,' including symptoms, diagnosis and prognosis, and what the individual



can still do despite the impairment(s), and physical or mental restrictions." Id.; see also 20 C.F.R. § 416.913.

First, Austin relies on the opinion of an examining physician, Dr. Karl Bodtorf, who conducted psychological tests on Austin in August of 2009. The ALJ provided several reasons for rejecting Dr. Bodtorf's opinions. First, he concluded that Dr. Bodtorf's findings were largely based on Austin's subjective allegations and were inconsistent with "the longitudinal evidence of record." (Tr. 30.) Although Austin argues that the ALJ provided no reasonable explanation for his conclusions, the court disagrees. The ALJ's opinion contains extensive quotations from Dr. Bodtorf's evaluation summarizing *Austin's description* of her emotional problems. (Tr. 22.) Moreover, the ALJ specifically stated that Dr. Bodtorf noted in his evaluation that *Austin's* "*responses* on personality testing are not valid." (Tr. 30.) The ALJ further found that this conclusion by Dr. Bodtorf undermined Dr. Bodtorf's finding that the personality profile identified in her testing is "relatively" consistent with her clinical picture. Although Austin attempts to reconcile this apparent inconsistency by submitting a later letter from Dr. Bodtorf to the Appeals Council which Austin characterizes as a "clarification" to the opinion of Dr. Bodtorf that was presented to the ALJ, the court is unpersuaded by Austin's argument that the ALJ's decision to reject Dr. Bodtorf's opinion based on this apparent conflict is unsupported by substantial evidence or controlled by an error of law. The reconciliation of such inconsistencies is within the purview of the fact-finder. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of

evidence). Dr. Bodtorf's later submission, which could be fairly viewed as an attempt to gloss over the potential problems he previously noted with Austin's responses on her psychological testing, does not render the ALJ's opinion unsupported or warrant remand. Cf. Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011) (reversing and remanding the Commissioner's decision because upon considering the whole record, including the new evidence submitted to the Appeals Council, the court could not determine whether substantial evidence supported the ALJ's denial of benefits, but recognizing that in some cases the record would clearly show that the additional evidence did not cause the ALJ's decision to be unsupported by substantial evidence.). Moreover, although Dr. Bodtorf's letter to the Appeals Council states that he did not find Austin to be malingering, both opinions unequivocally acknowledge that he believed Austin to be exaggerating her symptoms. (Tr. 30, 489-91, 536.) The ALJ's rejection of Dr. Bodtorf's opinion that such exaggeration did not render her test results unreliable is within his purview as the fact-finder. See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) (finding that substantial evidence supported an ALJ's rejecting of an examining psychologist where the psychologist "acknowledged the significant errors in his tests and because the record contains little evidence of [the claimant's] alleged depression").

Further, the ALJ specifically found that Austin's characterization and description of her symptoms to Dr. Bodtorf were inconsistent with those made to her treating physicians. Although Austin claims that the ALJ did not identify those inconsistencies, the ALJ's opinion discusses Austin's treatment notes extensively and shows that he considered treatment notes that reflected that Austin reported an improvement in her symptoms when she was placed on anti-psychosis medications and remained compliant with them. (See Tr. 21-22.) Significantly, it is clear that the ALJ weighed heavily the most recent treatment notes available to him, approximately two and a half



months prior to Dr. Bodtorf's consultative examination, which showed that her symptoms were "dramatically improved and stable on current medication regime." (Tr. 22.) The next paragraph of the ALJ's opinion summarizes the statements reported by Austin to Dr. Bodtorf that appeared to conflict with those treatment notes. (Id.) Accordingly, the court finds Austin's argument that the ALJ's rejection of Dr. Bodtorf's opinion was unsupported by substantial evidence to be without merit.[1] See Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes).

Next Austin argues that the ALJ erred in rejecting the opinion evidence of Clare McLain, a nurse practitioner. This argument also fails. The ALJ's opinion shows that he rejected McLain's opinion because it was inconsistent with Austin's medical records. For example, the ALJ found McLain's statement that Austin continued to have problems despite medication to be undermined by treatment notes showing improvement, including "normal" functioning, when Austin was compliant with certain prescriptions. (Tr. 30.) The ALJ further noted numerous instances in the treatment notes showing that both Austin and her mother "adjusted medications many times without consulting [medical] staff" and that they refused Seroquel "even though it worked very well for her psychotic symptoms" because Seroquel caused Austin to gain weight, and gaining weight was worse than experiencing auditory hallucinations. (Tr. 30, 368, 370.) The ALJ's view that McLain's opinion was undercut by evidence that Austin's disorder worsened when she did not take her

---

[1] Austin also raises an issue regarding the ALJ's rejection of a "Mental Residual Functional Capacity" Form on the basis that Dr. Bodtorf's form did not express or define the terms he used in quantitative terms consistent with the Social Security Rulings. The court need not address this issue, however, because even assuming without deciding that Austin is correct on this point, the ALJ's rejection of Dr. Bodtorf's opinion is nonetheless supported by substantial evidence for the reasons discussed above.



prescribed medications and improved—albeit not completely resolved—when she complied is supported by substantial evidence in the record. The case relied upon by Austin, Lawrence v. Astrue, C/A No. 09-1323, 2011 WL 503793 (D. Kan. Feb. 10, 2011), does not aid Austin, since that case did not involve treatment notes that undermined the medical opinion.

Austin also argues that the ALJ erred in considering Austin's noncompliance with her medications because a social security ruling required him to expressly warn her that disability benefits could be denied on that basis and give her a chance to comply. See SSR 82-59, 1982 WL 31384. The Commissioner correctly points out, however, that this Ruling is not applicable in Austin's case, since the ALJ did not deny benefits for failure to follow prescribed treatment. Id.; see also Owen v. Astrue, 551 F.3d 792, 800 n.3 (8th Cir. 2008) (noting that SSR 82-59 does not apply where noncompliance is used for purposes of determining the weight to give to an opinion). Rather, he rejected the opinions of Dr. Bodtorf and Nurse McLain because their opinions regarding Austin's limitations did not take into account the treatment notes that showed that Austin's condition improved when she was compliant with her medication.[2] The ALJ also rejected Austin's credibility regarding her subjective symptoms because he found that she exaggerated them and did not account for the improvement she experienced when compliant. The court therefore finds that Austin has failed to show that the ALJ, whose role is properly to weigh such issues, committed legal error by considering those treatment notes in that fashion.

---

[2] Austin's attempt to place the responsibility for Austin's noncompliance on Austin's mother, even if it were fairly supported, is irrelevant to this appeal. The ALJ did not deny benefits because Austin did not take her medications; he simply rejected certain pieces of evidence in the record that did not take into account the treatment notes showing that her condition improved when she took certain medications and worsened when she did not.



**RECOMMENDATION**

Thus, Austin's arguments that the ALJ ignored Dr. Bodtorf's opinion or failed to provide explanation for rejecting it are without merit. Nor is remand warranted based on his subsequent "clarifying" letter. Similarly, Austin has not shown that the opinion of Nurse McLain was improperly discounted in light of other evidence in the record which undermined it. Finally, she has not successfully demonstrated that the ALJ's rejection of certain record evidence based on Austin's admitted periodic noncompliance with her prescribed treatment was controlled by error of law. Accordingly, the court recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 23, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).